United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DANIEL STEPHEN VALENCIA,<br><br>   Plaintiff,<br><br>   v.<br><br>NANCY A. BERRYHILL,<br><br>   Defendant. | Case No. 5:15-cv-03048-HRL<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 27, 28, 30 |

Plaintiff Daniel Valencia appeals a decision denying his application for disability insurance benefits under Title II of the Social Security Act (Act). The parties have filed cross-motions for summary judgment.[1] Plaintiff did not file a reply. All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. The matter was deemed submitted without oral argument. Upon consideration of the moving and responding papers, and for the reasons set forth below, plaintiff's motion is denied and defendant's motion is granted.

---

[1] After granting a number of requests for extension of the briefing schedule, the court indicated that it was disinclined to grant any further extensions. (Dkt. 26). The parties nevertheless stipulated to another one. (Dkt. 27). Although the court found good cause for the requests it granted, it does not find good cause for the last one. The court nevertheless has accepted and considered all of the parties' papers in this matter.

**BACKGROUND**

Valencia was born in 1983 and was 30 years old at the time the Administrate Law Judge (ALJ) rendered the decision under consideration here. After graduating from college in 2005 with an engineering degree, plaintiff began working for Adobe Systems, Inc. (Adobe) as a software engineer. Valencia claims that he began experiencing pain in his neck, upper back, and bilaterally in his shoulders, arms, and hands. He last worked in January 2009.

He applied for disability insurance benefits, alleging disability since August 10, 2008[2] due to cervical dystonia, peripheral neuropathy, sleep apnea (partially resolved by surgery), and thoracic outlet syndrome. The application was denied initially and upon reconsideration, and Valencia requested a hearing before an ALJ.

At the hearing, plaintiff testified that he could not work due to cervical dystonia and sleep apnea.[3] The ALJ also received testimony from medical expert Dr. Bruce Witkind and vocational expert Linda Ferra. He subsequently issued a decision concluding that Valencia is not disabled under the Act.

The ALJ found that plaintiff last met the insured status requirements of the Act on December 31, 2012 and that he had not engaged in substantial gainful activity from his original alleged onset date of August 10, 2008 through his date last insured. The ALJ further found that Valencia has the following severe impairments: status post septum straightening surgery and jaw surgery and obstructive sleep apnea. However, he found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526). The ALJ concluded that Valencia could perform his past relevant work as a software engineer, finding that he had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with certain limitations as follows:

---

[2] Plaintiff later amended the onset date to January 31, 2009. (AR 195).

[3] Plaintiff also testified that he experienced some amount of depression related to the pain, but acknowledged that he had not seen a psychiatrist, psychologist, or therapist in the last three years. (AR 76).

2

> Specifically the claimant can lift and/or carry ten pounds occasionally, less than ten pounds frequently; he can sit, stand and/or walk for six hours out of an eight-hour workday; he can occasionally climb stairs and ramps, stoop, balance, crouch, kneel, and crawl; and he is never to climb ladders, ropes, or scaffolds.

(AR 30). Alternatively, the ALJ concluded that plaintiff could perform other jobs existing in the national economy---namely, data entry clerk; assembler, Dictionary of Occupational Titles (DOT) 734.687-018; and charge account clerk, DOT 205.367-014.

In making that determination, the ALJ partially discounted Valencia's testimony and gave little weight to the opinion of plaintiff's treating physician, Dr. Norman Banks, who diagnosed plaintiff with cervical dystonic syndrome (which he believed caused thoracic outlet syndrome) associated with anterior scalene muscular spasm, and ongoing myofascial-related pain involving the bilateral trapezius musculature. Instead, the ALJ gave significant weight to the opinion Dr. Witkind, who testified that the diagnosis of thoracic outlet syndrome was not well proven and concluded that plaintiff could perform medium work. The ALJ also gave significant weight to the opinions of the State agency physicians who reviewed plaintiff's records and concluded that he could perform light work with some limitations.

The Appeals Council denied Valencia's request for review, and the ALJ's decision became the final decision of the Commissioner. Plaintiff now seeks judicial review of that decision, contending that the ALJ erred in a number of ways. In essence, he argues that the ALJ improperly discounted the importance of Dr. Banks' opinion; made faulty RFC findings; failed to fully question Valencia and develop the record as to the demands of his past relevant work; posed an improper hypothetical to the vocational expert; made findings at step five of the sequential analysis that are not supported by substantial evidence; and improperly discredited plaintiff's subjective complaints.

## LEGAL STANDARD

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal

standards. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance---it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Drouin, 966 F.2d at 1258.

### B. Standard for Determining Disability

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Additionally, the impairment must be so severe that a claimant is unable to do previous work, and cannot "engage in any other kind of substantial gainful work which exists in the national economy," considering the claimant's age, education, and work experience. Id., § 423(d)(2)(A).

In determining whether a claimant has a disability within the meaning of the Act, an ALJ follows a five-step analysis, 20 C.F.R. § 404.1520:

1. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. If not, the analysis proceeds to step 2.

2. At step two, the ALJ must assess whether the claimant suffers from a severe impairment or combination of impairments that is expected to last for a continuous period of at least 12 months. Id., §§ 404.1520(a)(4)(iii), 404.1509. If so, the analysis proceeds to step 3.

3. At step three, the ALJ considers whether the claimant's impairments or

4

|   |   |
|---|---|
| 1 | combination of impairments meet or medically equal the requirements of the |
| 2 | Listing of Impairments. Id., § 404.1520(a)(4)(iii). If so, the claimant is disabled. |
| 3 | If not, the analysis proceeds to step four. |

4. At step four, the ALJ determines whether the claimant has the RFC to perform past work despite his limitations. Id. §§ 404.1520(a)(4)(iv). If the claimant cannot still perform past work, then the evaluation proceeds to step five.

5. At the fifth and final step, the ALJ must determine whether the claimant can perform other work available in the economy, considering the claimant's RFC, age, education, and work experience. Id., § 404.1520(a)(4)(v). If so, the claimant is not disabled.

The claimant bears the burden of proof at steps one through four; the Commissioner has the burden at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001).

## DISCUSSION

A. **Treating Physician's Opinion**

Plaintiff argues that the ALJ erred in giving "little weight" to Dr. Bank's opinion and instead giving "significant weight" to that of Dr. Witkind and the State agency doctors.

### 1. Dr. Banks

Dr. Banks, a physiatrist, treated Valencia for several years and, as discussed above, he is the physician who diagnosed plaintiff with cervical dystonic syndrome and ongoing myofascial-related pain. On March 18, 2013, he completed an RFC questionnaire in which he opined that Valencia can walk 1-2 city blocks without rest or pain; can sit for 20 minutes at a time; can stand 10-15 minutes at one time; can sit and stand/walk less than 2 hours in an 8-hour day; needs to walk every 20 minutes for about 10 minutes at a time; and needs to shift positions and take unscheduled breaks 8-9 times per day for 20-30 minutes at a time. He further stated that plaintiff can rarely lift less than 10 pounds and never more than 10 pounds; can occasionally look down, turn his head left or right, and look up; rarely hold his head in a static position; rarely twist, stoop, or crouch; and never climb ladders or stairs. He noted no limitations with reaching, fingering, or handling, and said that Valencia was likely to have good days and bad days and would miss an

5

average of 4 days of work per month due to his impairments.  Dr. Banks further noted that "Findings from 2007 EMG [electromyogram] were consistent with thoracic outlet syndrome" and wrote a comment to "see clinical notes for further information."  (AR 1017-1020).

### 2. Dr. Witkind

At the administrative hearing, neurologist Dr. Witkind testified that although plaintiff had been diagnosed with myofascial pain in the cervical and shoulder regions, there was no evidence of weakness or atrophy and that the diagnosis of thoracic outlet syndrome was "not really well proven in the file." (AR 54). He acknowledged that thoracic outlet syndrome is often a diagnosis of exclusion and that x-rays revealed that Valencia had a cervical rib, but that it did not appear to be a classic finding of thoracic outlet syndrome.  (AR 72).  He further testified that "true thoracic outlet would have more physical findings," noting that Valencia's diagnosis was not clearly borne out by x-ray and MRI evidence.  (AR 72-73).  He further opined that in benign cases of pain (i.e., cases not involving cancer or where there is no evidence of spinal cord or nerve root compression), he believed that the amount of medications plaintiff was taking was excessive on a long term basis and that plaintiff was overmedicated.  (AR 72).  Opining that plaintiff's alleged "pain problem [was] without a specific known pain generator," Dr. Witkind found Valencia's "subjective complaints are far outweighing any objective findings," except for sleep apnea, which Dr. Witkind agreed was a valid finding.  (AR 67-68).

In Dr. Witkind's view, plaintiff could perform medium work---occasionally lift, pull, push, and carry up to 50 pounds and frequently 30 pounds or less; no standing or walking limitations; no limitations on climbing stairs or ramps; never ropes, scaffolds, or ladders; no height restrictions; no restrictions on balancing, stooping, crouching, kneeling, or crawling; no environmental limitations; no communication limitations; and no restrictions on fingering or handling, but would be limited to only occasional overhead reaching.  (AR 56-59).

### 3. State Agency Physicians

State agency physicians L. Bobba, M.D. and L. Limos, M.D. reviewed the medical evidence and opined that Valencia is not disabled.  They noted that he had upper back myofascial pain, but that his symptoms improved following obstructive sleep apnea surgery and were

currently controlled with medication. (AR 1047, 1056). They also noted the diagnosis of thoracic outlet syndrome attributed to muscular spasms/cervical dystonia, but stated that there were no documented neurological defects. (Id.). In view of Valencia's pain, both physicians concluded that he could perform light work, with limited reaching but otherwise unlimited handling and fingering; occasional to frequent postural limitations; and avoidance of concentrated exposure to hazards (machines, heights, etc.). (AR 1045-47, 1055-56).

### 4. The ALJ's conclusion

The ALJ gave Dr. Banks' opinion "little weight" and instead gave "significant weight" to that of Dr. Witkind and the State disability examining physicians. He found that Dr. Banks' March 18, 2013 RFC assessment was not supported by objective evidence, was inconsistent with the record as a whole, lacked explanation, and was based on Valencia's subjective complaints.

When evaluating medical evidence, an ALJ must give a treating physician's opinion "substantial weight." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009). "When evidence in the record contradicts the opinion of a treating physician, the ALJ must present 'specific and legitimate reasons' for discounting the treating physician's opinion, supported by substantial evidence." Id. (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). When a treating physician's opinion is not contradicted by another physician, the ALJ must provide "clear and convincing" reasons for disbelieving the treating physician. Id. at 1228 n.8.

Valencia argues that the ALJ failed to provide clear and convincing reasons in discounting Dr. Banks' opinion. However, because Dr. Banks' opinion was contradicted by other physicians, the ALJ was required to articulate only "specific and legitimate" reasons, supported by substantial evidence. Bray, 554 F.3d at 1228.

The ALJ explained that both Dr. Banks' diagnosis and his assessment of Valencia's functionality were not supported by objective evidence. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Focusing primarily on records from December 2008 through the first half of 2009, plaintiff argues that the ALJ erred because there are objective findings in the record consistent with known diagnostic

7

criteria for thoracic outlet syndrome and myofascial pain:

- On December 17, 2008, a physical examination showed notable amounts of tenderness to palpitation throughout the upper trapezius musculature with notable amounts of muscular tightening in the trapezius musculature, more notable on the right compared to the left, but significantly present in both. Four trigger points in the left trapezius were identified, three were also identified in the second portion of the trapezius, and two in the first portion of the trapezius. Trigger point injections were administered. However, Valencia was also found to have "full range of motion in the bilateral upper extremities without deficit." (AR 783-784).

- On January 8, 2009, Dr. Banks diagnosed Valencia with cervical dystonic syndrome associated with anterior scalene muscular spasm, and ongoing myofascial-related pain involving the bilateral trapezius musculature. Even so, these same records indicate that Dr. Banks deferred a physical examination and made no objective clinical findings other than to note that Valencia was alert and oriented and in no acute distress. (AR 782).

- A physical exam in March 2009 revealed tenderness in the upper trapezius, and notable tenderness along the right biceps and triceps muscular intersection, albeit Dr. Banks also noted that Valencia was alert and oriented and in no acute distress. (AR 779).

- In June 2009, Dr. Banks assessed that Valencia had neck pain, full range of motion but pain with extension and rotational movements, tenderness with palpitation over the bilateral trapezius muscles. (AR 774).

- In July 2009, following an epidural steroid injection, Valencia "report[ed] having significant amounts of relief for approximately 1-1/2 weeks," and had return of pain "although not to as an extensive degree" and "report[ed] having his best pain relief since his ordeal began, since having his epidural." (AR 773). Physical examination revealed tenderness throughout the cervical spine and the upper trapezius musculature bilaterally," though Dr. Banks noted that plaintiff was

"stable overall." (AR 773).

Plaintiff also points out that in a May 19, 2014 letter, Dr. Banks stated that the thoracic outlet syndrome diagnosis was suggested by "the fullness of [plaintiff's] anterior scalene" and by his beneficial response to anterior scalene Botox injections. (AR 1060).

The ALJ explained that Dr. Banks' opinion was inconsistent with plaintiff's daily activities, noting that Valencia remained able to drive, use a computer, write, type, perform some household chores, run errands, attend to personal care, and maintain friendships. (AR 30). Conflicts with a claimant's activities may justify rejecting a treating physician's opinion. Morgan, 169 F.3d at 600-02. The court is unpersuaded that there necessarily is such a conflict here, inasmuch as the record indicates that plaintiff said he did these things with difficulty and required assistance. (AR 88, 172-74). Even so, viewing the record as a whole, the court finds that the ALJ gave sufficient reasons supported by the record in giving Dr. Banks' opinion little weight.

In reviewing plaintiff's medical records, the ALJ correctly noted that on November 20, 2010, Valencia had improving pain control with his existing pain regimen (AR 31, 392), and on November 29, 2010, he was stable overall without new complications or complaints (AR 31, 907). Additionally, a December 2010 examination revealed that Valencia had 5/5 strength in his extremities, with triceps weakness that was "very subtle and may be effort dependent," with normal bulk and tone, and no wasting or fasciculations; normal reflexes and sensation; normal coordination and fine finger movements; and normal gait. (AR 31, 908). A June 2011 neurological examination showed that plaintiff was alert and oriented with normal attention and memory; normal range of motion in the neck; full strength on confrontational testing throughout his arms and legs; normal bulk and tone; and normal gait and coordination. (AR 31, 962). In October 2011, Dr. Banks noted that Valencia had two electromyogram/nerve conduction studies that were normal and that plaintiff was stable on Percocet. (AR 31, 759). In April 2012, Valencia is noted as being awake, alert, and oriented; having normal muscle tone; normal peripheral pulses in the extremities; and motor strength and sensation in the upper and lower extremities grossly intact and symmetric. (AR 31, 948). In April 2013, plaintiff was found to be alert and oriented, with full range of motion in the neck and no peripheral edema in the extremities. (AR 32, 1022).

9

He reported that his pain was controlled on medication. (AR 1022).

The ALJ further explained that "Dr. Banks primarily summarized in the treatment notes the claimant's subjective complaints, diagnoses, and treatment, but he did not provide objective clinical or diagnostic findings to support the functional assessment." (AR 32). Indeed, when asked on the RFC assessment form to identify the clinical findings and objective signs to support his assessment, Dr. Banks wrote only: "Please see clinical notes." (AR 1017). However, as discussed, the ALJ reviewed Dr. Banks' notes and found that a number of physical exams reflected normal range of motion, strength, reflexes, sensation, gait, attention, and memory. (AR 31-32, 908, 948, 962, 1022). And, while Dr. Banks stated that findings from a 2007 electromyogram were consistent with thoracic outlet syndrome, Dr. Banks' clinical notes indicate that two more recent tests were normal. (AR 31, 759).

The ALJ also took into account Dr.Witkind's specialization in neurology, as well as his and the State agency physicians' familiarity with and understanding of Social Security disability programs and requirements. (AR 33). Under the regulations, the ALJ properly may credit their opinions based on their expertise. 20 C.F.R. § 404.1527.

The court concludes that the ALJ gave specific and legitimate reasons, supported by substantial evidence, for giving Dr. Banks' opinion little weight, in favor of those offered by Dr. Witkind and the State agency physicians.

B. **The ALJ's RFC finding**

Plaintiff nevertheless argues that the ALJ's RFC assessment is not supported by substantial evidence and is internally inconsistent with the opinions of Dr. Witkind and the State agency physicians he credited.

As discussed, Dr. Witkind observed that plaintiff had been diagnosed with myofascial pain in the cervical and shoulder regions, but noted that there was no evidence of weakness or atrophy and that the diagnosis of thoracic outlet syndrome was not clearly established by the medical and radiological evidence. (AR 32, 54, 67, 72-73). Relevant to the discussion here, he concluded that Valencia could perform medium work, but would be limited to occasional overhead reaching bilaterally. (AR 56-59).

The State agency physicians, Drs. Bobba and Limos, noted the thoracic outlet syndrome diagnosis, found that plaintiff had severe disorders of muscle, ligament, and fascia (AR 1044, 1053), and concluded that he could perform light work, with limited reaching but otherwise unlimited handling and fingering; occasional to frequent postural limitations; and avoidance of concentrated exposure to hazards (machines, heights, etc.). (AR 1045-47, 1055-56).

Among the opinion evidence, the ALJ declined to adopt any particular RFC assessment in its entirety and said that he would instead "adopt[] a residual functional capacity that is best supported by the objective evidence as a whole." (AR 32). In determining Valencia's RFC, the ALJ partially credited plaintiff's subjective complaints (AR 30) and found that he was more limited than as opined by Dr. Witkind and the State physicians. In the end, the ALJ concluded that plaintiff could perform less than a full range of sedentary work: lift and/or carry ten pounds occasionally, less than ten pounds frequently; he can sit, stand and/or walk for six hours out of an eight-hour workday; he can occasionally climb stairs and ramps, stoop, balance, crouch, kneel, and crawl; and he is never to climb ladders, ropes, or scaffolds. (AR 30).

Valencia argues that the ALJ erred by (1) failing to resolve the conflict between the opinions of Dr. Witkind and the State agency physicians as to the thoracic outlet syndrome diagnosis; and (2) failing to adopt the reaching limitations included by Dr. Witkind and both State agency physicians in their respective RFC findings.

It is the ALJ's responsibility to determine a claimant's RFC. Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). The RFC assessment must be based on all the relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1). An ALJ need not agree with everything an expert witness says in order to find that the expert's testimony contains substantial evidence. Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989).

In crediting Dr. Witkind's opinion, the ALJ gave a detailed summary of his testimony, including that thoracic outlet syndrome was not clearly established in the medical and radiological evidence and is a rare diagnosis (usually one of exclusion); and that Valencia has a pain problem without a specific known pain generator (other than Dr. Banks' opinion of thoracic outlet syndrome). (AR 32-33). As discussed above, the ALJ reviewed the medical evidence and

correctly noted that records showed normal neurological function, attention, memory, strength and range of motion and that plaintiff's condition was stable overall with pain controlled on existing medication. (See, e.g., AR 31, 759, 907, 908, 948, 962, 1022). The ALJ incorporated Dr. Witkind's assessment into his own findings, giving "great weight" to "Dr. Witkind's evaluation of the claimant's condition." (AR 33).

The ALJ did not include a restriction on reaching in his RFC assessment, but that determination is supported by substantial evidence. As Dr. Witkind pointed out, Valencia exhibited no weakness or atrophy. (AR 32, 54). And, the ALJ correctly noted that physical examinations revealed normal functioning in the upper extremities. (AR 31-32). For example, and as already discussed, a December 2010 examination revealed that Valencia had 5/5 strength in his extremities, with triceps weakness that was "very subtle and may be effort dependent," with normal bulk and tone, and no wasting or fasciculations; normal reflexes and sensation; normal coordination and fine finger movements; and normal gait. (AR 31, 908). A June 2011 neurological examination showed that plaintiff was alert and oriented with normal attention and memory; normal range of motion in the neck; full strength on confrontational testing throughout his arms and legs; normal bulk and tone; and normal gait and coordination. (AR 31, 962). In April 2012, Valencia is noted as being awake, alert, and oriented; having normal muscle tone; normal peripheral pulses in the extremities; with motor strength and sensation in the upper and lower extremities grossly intact and symmetric. (AR 31, 948). In April 2013, plaintiff was found to be alert and oriented, with full range of motion in the neck and no peripheral edema in the extremities, and he reported that his pain was controlled on medication. (AR 32, 1022).

The Commissioner argues that, even if a limitation for occasional overhead reaching was included in the ALJ's RFC assessment, such a finding would not have made a difference in the ALJ's ultimate conclusion that plaintiff is not disabled. Indeed, the DOT indicates that, as generally performed, the duties of a software engineer include no more than occasional reaching. See AR 1047; DOT 030.062-010, 1991 WL 646541; see also Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986) ("The Secretary may rely on the general job categories of the [DOT], with its supplementary Selected Characteristics, as presumptively applicable to a claimant's prior work.").

12

Moreover, in his work history report, plaintiff stated that in his engineering job, he engaged in reaching activities no more than 30 minutes in an 8-hour day. (AR 161). That is less than the occasional reaching opined by Dr. Witkind. See SSR 83-10 (stating that "'Occasionally' means occurring from very little up to one-third of the time.").

The court finds that the ALJ reasonably resolved any conflict between Dr. Witkind's opinion as to the thoracic outlet syndrome diagnosis and those of the State agency physicians. See Magallanes, 881 F.2d at 751 (stating that the ALJ can meet his burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.").

C. **Plaintiff's Past Relevant Work**

The ALJ found that Valencia could perform his past relevant work as a software engineer, as actually and generally performed, and that this work did not require the performance of work-related activities precluded by his RFC. Plaintiff contends that the ALJ's conclusion is not supported by substantial evidence because he did not question Valencia at the administrative hearing as to the physical and mental demands of his work.

At step 4 of the five-step sequential analysis, the claimant has the burden of showing that he can no longer perform his past relevant work, but the ALJ must still make the requisite factual findings to support his conclusion. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). "This is done by looking at the 'residual functional capacity and the physical and mental demands' of the claimant's past relevant work." Id. at 844-45 (citing 20 C.F.R. § 404.1520(e) and § 416.920(e)). A claimant will be found not disabled when it determined that he retains the RFC to perform either (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation and generally required by employers throughout the national economy. Id. (citing SSR 82-61). "This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." Pinto, 249 F.3d at 845. However, the Ninth Circuit has never required explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed." Id.

13

"Social Security Regulations name two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed vocational report, SSR 82-61, and the claimant's own testimony, SSR 82-41." Id. The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles." Id. at 845-46.

Here, the Commissioner does not dispute that the ALJ did not question Valencia about the mental and physical demands of his past work as a software engineer. But defendant says it was unnecessary for the ALJ to do so because plaintiff provided that information in a work history report. Indeed, in that report, plaintiff indicated that for his software engineer job, he used machines, tools, or equipment; used technical knowledge and skills; and wrote reports. (AR 161). Additionally, he typed/used a computer 6-8 hours per day; wrote, typed or handled small objects 7-8 hours per day; walked 1 hour per day; stooped 30 minutes per day; reached 30 minutes per day; handled or grabbed big objects 30 minutes per day; crouched 15 minutes per day; and never kneeled or crawled. (AR 161). Further, the form states that lifting/carrying duties involved "lifting and moving computers and laptops 5-30 lbs, short distances"; that the heaviest weight Valencia lifted was 20 pounds or 30-35 pounds; and that he frequently lifted less than 10 pounds. (Id.).

In concluding that plaintiff could perform his past relevant work, the ALJ stated:

> Based on the claimant's documented vocational background, the claimant's testimony, and the testimony of the vocational expert, the undersigned finds the claimant's work in the occupations listed below is past relevant work because the claimant performed it prior to the period being adjudicated and within 15 years of the date last insured, for a sufficient length of time to learn it and provide average performance, and at the level of substantial gainful activity: software engineer, sedentary, skilled (SVP 8) [footnote omitted], as generally performed pursuant to the DOT and as actually performed by the claimant.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of the claimant's past relevant work, based on the testimony of the vocational expert, the undersigned has determined the claimant is able to perform this past relevant work as actually and generally performed. The testimony of the vocational expert is consistent with the DOT, and the undersigned accepts it.

(AR 34). Based on this explanation, it is not entirely clear that the ALJ relied on plaintiff's work history report in concluding that he could perform his past relevant work. Even so, the decision

14

indicates that he did consider all of Valencia's documented work background, and the ALJ properly could rely on the vocational expert's testimony and the DOT to support his conclusion that plaintiff could do his past relevant work as generally performed. SSR 82-61 at *2 ("The [DOT] descriptions can be relied upon---for jobs that are listed in the DOT---to define the job as it is *usually* performed in the national economy."). Regulations recognize that some individual jobs may require somewhat more or less exertion than the DOT description; however, if a claimant can perform the functional demands and job duties as generally required by employers throughout the economy, he should be found not disabled. Id.

In this case, the vocational expert testified that a software engineer job is skilled, sedentary work. (AR 98). The ALJ correctly noted that this testimony is consistent with the DOT. See DOT 030.062-010 Software Engineer, 1991 WL 646541. The ALJ posed a hypothetical of an individual the same age, education, and vocational background as Valencia who could lift/carry less than 10 pounds; stand/walk 2-4 hours; sit for 6 hours; occasionally use stairs and ramps; never use ladders, scaffolds, and ropes; occasionally balance, stoop, crouch, kneel, and crawl; frequent bilateral reaching, handling, and fingering; no communication limitations; no unscheduled breaks; restrictions to less than occasionally working at heights; and will miss work less than one time per month. The vocational expert testified that such an individual would still be able to perform plaintiff's past relevant work as a software engineer. (AR 99-100). For the reasons discussed above, the ALJ's conclusion that plaintiff retains greater functional ability than the hypothetical individual is supported by substantial evidence in the record. The ALJ therefore properly could rely on the vocational expert's testimony in concluding that Valencia's RFC did not preclude him from performing his past relevant work as a software engineer. 20 C.F.R. § 404.1560(b)(2). The court finds no error here.

D. **ALJ's hypothetical to the vocational expert**

Emphasizing that the ALJ found that plaintiff's sleep apnea was a severe impairment, plaintiff argues that the ALJ erred at steps 4 and 5 by failing to account for his fatigue symptoms in the hypothetical presented to the vocational expert. "The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out all the limitations and restrictions of

15

the particular claimant.'" Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (quoting Embrey v. Bowen, 849 F.3d 418, 422 (9th Cir. 1988)). "An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations." Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001). "The vocational expert's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record." Magallanes, 881 F.2d at 756.

For the reasons already discussed, the court finds that the ALJ properly evaluated the medical evidence. In determining plaintiff's RFC, the ALJ explained that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and further stated that his RFC assessment took "into consideration the claimant's subjective complaints while finding the maximum limitations based on the objective evidence." (AR 30, 33). As discussed, the ALJ gave significant weight to the opinion of Dr. Witkind, who found sleep apnea to be a valid finding, as well as to the opinions of the State agency physicians, who accounted for Valencia's symptoms of fatigue and pain. As discussed, however, the ALJ was not required to agree with everything those doctors said. Magallanes, 881 F.2d at 753. And, the fact that the ALJ assessed Valencia at a lower level of functionality than did Drs. Witkind, Bobba, and Limos suggests that he did take plaintiff's subjective complaints into account and assigned greater significance to them than those physicians did. See 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201(h)(4) (stating that sedentary work "represents a significantly restricted range of work, and individuals with a maximum sustained work capability limited to sedentary work have very serious functional limitations."). The court finds no error here.

E. **ALJ's finding that plaintiff could perform alternative work identified at step 5**

Although not required, the ALJ made an alternate finding at step 5 that Valencia could perform other jobs existing in the national economy: data entry clerk;[4] assembler (DOT 734.687-

---

[4] Although the vocational expert did not provide the DOT code for this position, plaintiff says it is 203.582-054.

018; and charge account clerk (DOT 205.367-014). Valencia argues that the reaching and fingering requirements of these jobs exceeded the ALJ's RFC findings, those of the medical experts, or both.

To the extent Valencia reiterates his argument that the ALJ should have included certain limitations included by Drs. Witkind, Bobba, and Limos in their assessments, that argument is unpersuasive for the reasons already discussed.

Based on the ALJ's hypothetical, the vocational expert testified that such a person could perform the other sedentary jobs identified above. (AR 101-02). The ALJ's ultimate RFC determination attributed greater capability to plaintiff than the hypothetical individual and did not, for example, include any limitations on fingering or reaching. Because the hypothetical that the ALJ posed to the vocational expert contained all of the limitations the ALJ found credible and supported by substantial evidence, he properly could rely on the vocational expert's testimony in response to the hypothetical. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). The court finds no error here.

F. **The ALJ's adverse credibility determination**

Finally, Valencia argues that the ALJ improperly discredited his testimony based on his daily activities and social interactions and failed to properly consider plaintiff's work record.

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). In assessing subjective testimony, an ALJ conducts a two-step analysis. First, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir.2008) (quoting Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir.1996)). If the claimant does so, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "'only by offering specific, clear and convincing reasons for doing so.'" Id. (quoting Smolen, 80 F.3d at 1283-84). That is, the ALJ must "make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" Id. (quoting Thomas v. Barnhart, 278 F.3d 947,

17

958 (9th Cir.2002)). In weighing a claimant's credibility, an ALJ may consider several factors, including (1) ordinary techniques of credibility evaluation; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). "If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'" Tommasetti, 533 F.3d at 1039 (quoting Thomas, 278 F.3d at 959).

The ALJ concluded that although Valencia's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. (AR 31). In making this determination, the ALJ considered several factors.

As previously discussed, the ALJ noted that the medical evidence did not support plaintiff's allegations. (AR 30-33). For example, a number of physical examinations revealed that Valencia had normal strength in his upper and lower extremities, full range of motion in his neck, normal gait, was alert and oriented, and had normal attention and memory (see e.g., AR 908, 948, 962, 1022). The ALJ also noted Dr. Witkind's observation that there was no evidence of significant weakness or atrophy. (AR 32, 54). And, the more recent electromyograms/nerve conduction studies were normal. (AR 31, 759). "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

Additionally, in a finding not challenged on this appeal, the ALJ found that plaintiff did not receive the type of treatment one would expect for a completely disabled individual, correctly noting that treatment records showed that Valencia received routine, conservative, non-emergency treatment, such as pain medications and physical therapy. (AR 31). See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of 'conservative treatment'

18

is sufficient to discount a claimant's testimony regarding severity of an impairment.").

The ALJ also observed that plaintiff engaged in "a somewhat normal level of daily activity and interaction," including "he has a driver license and is able to drive, is able to use a computer, regularly attends church, and has good friends." (AR 30). Additionally, the ALJ noted that in a pain questionnaire, Valencia stated that he writes, types, brushes his teeth, does chores, showers, go[es] shopping, and run[s] errands." (Id., 172-74). As noted above, plaintiff stated that he did these things with difficulty and required assistance. (AR 88, 172-74). And, he now argues that it was error for the ALJ to discount his testimony based on these activities because they are not transferable to a work environment. However, even when "activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a total debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012); see also Valentine, 574 F.3d at 693 (concluding that although the ALJ recognized that evidence of the claimant's activities did not suggest that he could return to his old job, the ALJ properly concluded that the evidence contradicted the claimant's contentions as to how debilitating his symptoms were).

Plaintiff nevertheless contends that, given his college degree and relatively high income earned at Adobe, the ALJ should have determined that he is "unlikely to make up his impairments and limitations only to qualify for Social Security disability." The ALJ, however, did not fully discredit plaintiff's subjective complaints. Nor did he suggest that plaintiff was inventing his impairments. Rather, as discussed above, the ALJ appeared to give considerable credit to plaintiff's testimony in limiting him to less than a full range of sedentary work.

The ALJ gave sufficiently specific reasons supported by substantial evidence for partially discrediting plaintiff's testimony. The court finds no error here.

**ORDER**

Based on the foregoing, plaintiff's summary judgment is denied and defendant's cross-motion for summary judgment is granted. The clerk shall enter judgment accordingly and close this file.

SO ORDERED.

Dated: September 20, 2017

HOWARD R. LLOYD
United States Magistrate Judge